May it please the court, I want to start out with two observations. First, the subject of this dispute is a claim for attorney fees, fees which are awarded based on California law. The court is persuaded that one spouse has need, the other has the ability to pay. In other words, we're talking about a domestic support obligation. Could I stop you right there? Was there any determination by a court with respect to the $173,000? Uh, that came, no, that was never. Okay. Right. Second question, I think I've got this right, but those were, the $170,000 in change was all pre-petition, that was a pre-petition number, correct? Yes, it was an unliquidated claim. Essentially, there was a pending fee application to use bankruptcy parlance, but no application was made. And in making that determination to follow Judge Taylor's question, the Superior Court would have, among other things, had to determine the relative ability of the parties to pay, correct? Correct. And that would have involved the Chapter 11 debtor in possession, correct? Never got there because the claim was disallowed by the Bankruptcy Court. No, I, but, I mean, answer my question. I mean, what the judge would have been trying to figure out is what's the relative ability of the spouse versus the Chapter 11 debtor in possession, correct? Correct. Okay, thank you. Second, the bankruptcy case has, as I think you've noted, been dismissed. Once this appeal is resolved, the issue will go back to where it belongs, the California Divorce Court. The reason for this appeal is that if left in place, the Bankruptcy Court's order would preempt the Divorce Court from doing its job to redress the financial and litigation imbalance between these two cases. Well, I mean, fair enough, but isn't there a difference between something that is done as sort of a bankruptcy function and something that is the result of the parties' agreement? I mean, I know you don't agree with the judge's determination of the scope of the parties' agreement, but what she basically said is, I'm finding and concluding that the agreement was to walk away, correct? Yes, that's the argument. All right, so that's, I mean, that's not, I mean, that's not doctrinal in the way I think you're trying to suggest to us that it is, right? I was trying to give you another argument. Okay, I, okay. That the issue will have to be decided in Superior Court. Well, and let's tease that out a little bit. So you're saying, I love the word doctrinal, you're saying that it's somehow more appropriate for it to go or preferable for it to now bubble up anew to have a judge who didn't approve the settlement and whose order wasn't the order approving the settlement deciding what the settlement meant. I don't, doctrinally or any other words you want to use, I don't see that as a great place to be. I do not believe that the Bankruptcy Court appropriately ruled on the motion or that it was improper to have the Bankruptcy Court make the decision. Okay. This is an important issue. You know, given the historical. Well, can I, I think I hear what you're saying. Can I, can I offer you the following? You have the judge ruled on the allowability of the claim in some way that went to the merits and then the case were dismissed. You would tell me, well, that's clearly out of line. There was no, there's no reason for the Bankruptcy Court to do that, particularly in a dismissed case. So then it ought to be a state court judge telling us, okay, what's the right amount? And should it be a portion between the parties? Right. But when the bank, all the bankruptcy judges say, I think the agreement took care of this. So that's why I'm wondering if it makes any sense to argue about this going back to the state court. Yeah. Those were basically just preliminary comments. Okay. Sorry. Well, obviously you, you touched a nerve. So I wanted to go on with your argument. I apologize. I didn't mean to do that. It was just a preliminary throwaway comment, actually. The debtor's argument is twofold. First, that under paragraph 2.2.2a, settlement agreement, my client, the lawyers, SLT, agreed to withdraw its proof of claim. And second, that under paragraph 2.3, all of the liabilities through January 1st, 2020 are released. I think both of these arguments are equal. The agreement itself. So I'm going to start with the second point first, which is the scope of the release. The debtor claims that any obligation to SLT through January 1st, 2020 was released under paragraph 2.3. This is based on an arguably misplaced or frankly ambiguous adjective clause. Does the phrase, to the extent such liabilities have been approved by January 1st, 2020, apply solely to Mrs. Luce? Or to both Mrs. Luce and my client as the debtor contends? Now, that's a really, that's a really interesting point. And let me, let me see if I, if I understand it the way you do. There was a contingent, well, what you would call a contingent claim, what Mr. Hayes would call, not even that, in favor of the law firm. But the only way it would have arisen is through the wife, right? I mean, the wife would, I mean, there would have had to have been a claim assertable against the wife. And then the court would have said, and you know what? It really ought to be paid by the husband. So there's no, there's no way there's a direct claim by law firm against this debtor, correct? No, that's not correct. Because under California law, the claim can be asserted against the debtor, as was the case with the liquidated claim. I'm sorry, Judge Taylor, go ahead. That's Family Code 2030, right? Yes. I think, I think you're talking to bankruptcy judges about California family law. And I think you're, I think the two of you are saying the same thing. They couldn't, they had to go through the Family Code and make that disparate income kind of determination. Is that not accurate? The Family Court could assess the liability directly against the debtor, in this case, without, it was also No, no, no, they couldn't have assessed the liability. They could have said you ought to pay it. That's a very different thing, right? Now we're getting into Section 101 and the definition of a claim and a debt and, you know. Yeah, I don't know. Okay. The reason why I think it's important is because I think it goes, I think you hit the nail on the head, Mr. Tyler. It goes directly to how we ought to interpret that phrase. So you go ahead. Okay. So, to us, the answer seems pretty clear. For that reason, we think the bankruptcy court order needs to be reversed. Of course, the bankruptcy court was most emphatic in its view that the phrase applied to both Miss Luke's and SLT. At the very least, at the very least, we all know that since both parties participated in the drafting process, that rule of construction is not going to be helpful in resolving this dispute. So what has to happen? It has to go back to the bankruptcy court to determine the intent of the contract because the contract is ambiguous. What role is the intent of the bankruptcy judge who approves it? I mean, this is an unusual contractual context because the two parties can agree to something, but the bankruptcy judge has to approve it as being reasonable to the estate, appropriate bankruptcy purpose. And she fairly obviously didn't buy that an agreement that didn't include the waiver of these additional amounts was something she would have approved. Is that just irrelevant? No, it's not irrelevant, but I'm not sure that it's correct. I mean, she might have approved. The issue here is the lien on the property. And what was their escrow? Were they going to have trouble closing their, not their escrow, their settlement? Unless the lien was resolved. So the issue was, you know, they weren't going to figure out, weren't going to be able to figure out how to divvy up the proceeds, right, unless the lien was resolved. There was no objection to the lien. There was no objection to the amount that was due and owing under the judgment. That's not, they never raised any objections to that. No, but at the same time, there was a bankruptcy process that, you know, I mean, absent an immediate payment, which clearly is a benefit, this would have been part of a plan. And, you know, you might have waited months or years. And frankly, the case might have been dismissed. You might have been back at square one, right? You might have, except that this asset had significant value. And so my client would be interested at the rate of 10% a year, which, of course, you know, my client is very happy to do given the current interest rate environment. Oh, he'd rather have that than have the payment? You know, given the fact that there was an escrow fund of money, he would be interested 10%. Yes. Okay. Let's go to your other point. You've got, and you'll probably have to deal with it after you sit down, but I'm more concerned about the fact that they agreed to release their proof of claim after the bar date. So paragraph 1.2 of the settlement agreement separately defines, this is the rest of my argument, separately defines proof of claim and proof of claim number 13. They are defined differently. Proof of claim number 13 is just the secured portion of the proof of claim. And what was supposed to be released was proof of claim number 13. So the fact that this settlement called for release of proof of claim number 13, my client was perfectly happy to release the secured portion of its claim. That portion was being satisfied. While you're waiting, you might want to explain to us how the as amended clause fits in all that. Okay? Okay. I do need to reserve at this point. All right. Thank you very much. We'll let you reserve, and we will hear from your colleague, Mr. Hayes. Mr. Hayes. You're muted. You're muted. The single most common phrase in current parlance. I actually have a sign that I hold up. I should get it. We cannot hear you. Thank you. Good afternoon, your honors. May it please the court. I'm John Hayes, appearing for the debtor in this matter. You can hear me okay? Now we can, yes. Perfectly. Great. Thank you. I don't actually have a lot to say, frankly. But I'm ready to answer questions. Let me give you one. And let me pick up the point I think Mr. Tong is going to make when we come back to him. You know, the definitions here were a little loose. There was a phrase, you know, claim as amended with respect to claim 13. It could easily have been claim 13-2, which would have made it clear. That's what everybody was talking about. But it didn't say that. So isn't that a bit of an ambiguity? Isn't he at least partly right about that? Your honor, I can see that there are some ambiguities in the settlement agreement. And I think I have a little different view because I wasn't there. I didn't get involved in this until the appeal started. So I'm reading this brand new as the court is.  Okay. So Mr. Tillum's right. You know, here it says proof of claim number 13. And here it says just proof of claim. And here it says all liabilities associated with child support and spousal support. And another place it says, well, the secured claim. I mean, there is a point to that. But what the court's job is to do when interpreting the contract is ultimately figure out what the parties meant. And that starts with the language. What did the parties intend when they said these words? And Mr. Tillum's point is, well, we need to have an evidentiary hearing. Let's get the parties up on the witness stand and they can say what they meant. Which is a complete waste of time, I think. Because his client will say, oh, I, you know, obviously. And our client will say, I wouldn't have written them this gigantic check in order to, if I was going to continue this divorce litigation when I'm trying to. A few witnesses say, I meant to give away this one. Right. Right. So to me, the determining factor really is the settlement agreement. I mean, the motion to approve the settlement. Mr. Luke said that I'm doing this because I need to finish this litigation at least up to that date. Resolve everything. Get it out of my hair so that I can start focusing on my bankruptcy case. That's why I'm doing this. And they not only did the appellant not object, but there was an amended notice with respect to the motion to approve the settlement that said, oh, wait, there was one mistake. And it was obviously a mistake pointed out by appellant in the motion to approve the settlement. So they read it. They knew what it said. And it said, you shall withdraw the proof of claim. And they're saying, well, I didn't mean that. I meant only withdraw a part of it. Actually, I'm going to file a new one anyway. And that's where this falls apart. Transfer these phones to your cell phones. Oh, yes, yes, yes, yes. We can hear somebody speaking in the background. Mr. Calley, please. Go ahead, Mr. Hayes. All right. So my point is this. When the court is trying to figure out when Judge Kaufman was trying to figure out what did these parties intend, there is clear statement of intent. Forgetting that. Well, yeah, but paragraph three says this in paragraph four. So here's what I intended. And that wasn't objected to. And really, my last comment is I doubt, as Judge Lafferty said, I doubt. I mean, I suspect Judge Kaufman would have been saying to the parties, I don't get this settlement. You're going to write a big check for prepetition debt for money that you absolutely owe. And then you're going to continue on with all the rest of this litigation anyway. You know, what am I missing here? What's the consideration under those set of facts? Yes. And so therefore, I mean, I don't think I think Judge Kaufman got it right. I think an evidentiary hearing is a waste of time. Let me ask you, Mike, you know, okay, got it right takes us back to interpreting the contract and discerning the intent of the parties as it actually existed. Or interpreting the contract plain language or doing something else. What is her role and what is the, for purposes of our decision, is the fact that she viewed the contract a certain way or appears to have, Mr. Tillman can tell me that the record doesn't support that she did this. I'm open to that. Isn't that something that factors into the analysis and how? Well, I'm not sure I understand that. As an independent party, she's trying to figure out what the parties to the contract meant. And she's required to do that first by reading the contract. And she read it and she said, I think I can tell what they meant by reading it. I guess let me ask a question. Didn't she have to do that before she approved the contract? You know, I think so, yes. Actually, I'd be interested in the answer to that to tell you the truth. Do judges actually read the entire settlement agreement when a motion to approve the settlement? Depends. Well, maybe not the boilerplate. I'll have to have an evidentiary hearing on that question. Maybe not the boilerplate. The principal economic terms, I think a judge doesn't approve something unless you think you understand the principal economic terms. Well, and they were laid out in the motion. Here's what we're paying Mrs. Lukes and here's Ann. The law firm has agreed to withdraw its proof of claim that is on file. There was no ambiguity about that. My point, I assume, I would say is that I don't know if the judge reads through it and starts seeing ambiguities. If there's an obligation to say, well, wait, are you guys sure you really made a deal? Because there's this ambiguity and that ambiguity. She understood the basic thrust of the settlement agreement, and there was no objection to the motion. That's the key, I think. Okay. Unless there's more questions, that's what I have. My colleagues have questions? Thank you. No, thanks. I'll go back on mute. All right, thank you. Thank you, Mr. Hayes. Mr. Till, you've got just about five minutes. Let's start with the as amended. There were three proofs of claim filed in this case. There was an initial proof of claim filed. There was an amended proof of claim. At the time the settlement was entered into, there were only those two. So the amended proof of claim clearly had to do with the second proof of claim that was filed. It couldn't have had anything to do with the third one because it hadn't yet been filed. The third one was the one that was post payment of the money? Yes. Okay, gotcha. Number two, in terms of having an evidentiary hearing and then just having the parties get up and say what they intended, it's not that simple. In this case, we would actually have Mr. Stallsbury get up on the stand and say, there were settlement negotiations between the parties. And the initial draft of this settlement agreement provided essentially a blanket mutual general release, which in fact would have been what they are now, what Judge Kaufman has awarded them. And that provision was stricken. So there's actually evidence that could be entered to show that the intent of the parties was far different than just the parties saying, well, I intended this and I intended that. No, there's objective evidence here that shows what the intent of the parties were. Third, this is the divorce case. Mr. Luke was not going to end this problem with this bankruptcy case. The divorce case was ongoing. It frankly is still ongoing. There are additional support obligations and legal fees ongoing. And he's going to have to deal with those. This case was never going to end with his financial problems related to this was never going to end with the bankruptcy court's decision. Let me stop you there, but it was going to end the pre-petition fees, which is why I asked you at the beginning whether these fees were all pre-petition. Now, I know we've got potentially some slough over, but really what we're talking about is the pre-petition world. We recognize that they're off to the races for their post-petition entanglements. I agree with that completely. I'm sure that's what he was intending, but that's not what it says. It very specifically refers to the amount of the judgment, the amount of the claim, based on the family court judgment, and it provided the date of the judgment. That was pretty clear. Now, I can't remember which member of the court asked this question, but somebody was asking about the role of the bankruptcy court and whether the bankruptcy court had to review the settlement agreement. Please keep in mind this is a 1919 motion. The court only needs to consider whether the settlement was in the range of reasonableness in order to approve the settlement. But isn't that range of reasonableness requirement one that looks to the range of reasonableness not just between the parties who can agree to whatever unreasonable thing they want to, but the range of reasonableness from the perspective of the estate and creditors? Perhaps, but then creditors should have come in. Yes, I think that is the law. My point is if creditors had had a concern, they should have appeared and objected and participated in the hearing. Well, I have a little twist on that, and that is that I agree that it's within the range of reasonableness, but if you can't determine what the settlement provides, how can you determine what range it's in, reasonable or otherwise? Don't you have to have some idea of what the settlement means to make that determination of reasonableness? You know, we have two alternatives. It's an A-B situation. Either it did include or it didn't include the unliquidated portion of the claim. Right. Both of those, in my view, I've never been a judge. I probably will never be a judge, but I've been doing bankruptcy a long time just like Mr. Hayes has, and it seems to me that either of those alternatives would have been within the range of reasonableness. So this court could have approved the settlement agreement either way, and I would point out that if you look at the transcript, I didn't get a lot of chance to argue this case. I got cut off about four different times in the course of my argument trying to make the points. The judge was very convinced at the outset that she knew the answer and was not open to listening to anything. I'm going to break in and cut you off also, joining Judge Kaufman in that respect, and that is I have a question. Under your interpretation of the agreement, what did your client give up? What was the consideration it gave to settle this case? It agreed to allow the proceeds to be distributed because there was an issue about how quickly the debtor could close the settlement. The debtor would not have been able to close the settlement unless this issue was resolved. Who did that benefit other than the spouse and your client? It benefited the estate, because the estate was then able to realize the net proceeds from the settlement. Why wouldn't the judge have been able to just sequester the money that would be paid to your client and distribute the rest of the proceeds? I'm sorry, can you repeat the question? I just don't understand why that's a benefit to the estate, because typically where you have a dispute, they have a lien. It doesn't sound like anybody's been fighting that. So the principal amount of the lien and some reasonable interest accrual would be put aside and the rest of it would be available to the estate and the thing would close. I don't understand why there was the kind of problem. You didn't have a lien claim for that other $170,000. Correct. Okay. But that argument cuts both ways, right? That argument cuts in both directions, because why would my client have given anything up when there was a large raise, there was large proceeds, the proceeds were in excess of the amount of the judgment lien, and there was no amount of the lien. What did your client give up? You're just telling me, why would he give anything up? Was there any consideration for this contract under your theory of the case? I don't think there was any consideration for it at all. The debtor wanted this settlement agreement and the debtor is the one that initiated this discussion. We were perfectly content to do nothing because our lien claim was perfectly good and valid and enforceable. There was nothing that my client had to give up and shouldn't have given anything up and didn't give anything up, in our view, in exchange for getting paid what it was entitled to under its lien claim. What did my client gain in exchange for waiving its unsecured claim? The answer is nothing. If there's a failure... No, what it really, realistically what it waived was the chance to claim it was priority, which it might have won or might have lost, right? It wasn't yet liquidated, and so... That's really what would have changed the bankruptcy, one way or the other. No, I'm not... Respectfully, I don't think that's right. I think it would have determined the dischargeability, not the priority. I don't think it's... It wouldn't have been a DSO? That would have been the same thing, right? Yeah, that's true. Yeah, okay. But that would have been a big deal, I think. Okay. All right, well, we let you go on. Obviously, we're interested in this. We let you go on quite a bit over your time, so we thank you both for your good arguments.  Thank you, Your Honor. Thank you. Thank you.
judges: Taylor, Faris, Laferty